IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES CLARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-00298 ) |
| RECEIVEABLES MANAGEMENT PARTNERS, LLC, et al., | ) Judge John Robert Blakey ) ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In January 2021, Plaintiff James Clark sued EHS Home Health Care Service, Inc. d/b/a Advocate Home Health Services ("Advocate") and two debt collectors relating to a debt that Plaintiff originally owed Advocate. [1]. Plaintiff alleges that the debt collectors, Defendants Meduit Group, LLC ("Meduit") and Receivables Management Partners, LLC ("RMP"), engaged in collection efforts that violated the Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud Act ("ICFA"), and the Telephone Consumer Protection Act ("TCPA"). *Id*. He also alleges that Defendant Advocate engaged in unfair and deceptive practices in violation of ICFA relating to its transfer of his debt. *Id*. While RMP and Meduit answered Plaintiff's complaint, [23], Advocate moved to dismiss Plaintiff's "unfair act" (Count II) and "deceptive practice" (Count III) ICFA claims pursuant to Federal Rule of Civil Procedure 12(b)(6), [20]. For the reasons set out below, this Court grants Defendant's motion.

1

I.      **Allegations of the Complaint**[1]

Sometime prior to August 17, 2020, Plaintiff accrued $195.61 in charges for medical services that Advocate provided to him. [1] ¶¶16, 20–21. When Plaintiff failed to pay, Advocate engaged Defendant Meduit to collect the debt on Advocate's behalf. *Id.* ¶ 18. In turn, Meduit retained Defendant RMP to collect on the debt. *Id.* ¶ 19.

On October 29, 2020, an RMP representative called Plaintiff to collect the debt and told Plaintiff he owed $195.61. *Id.* ¶¶ 22–25. Plaintiff, however, had already paid Advocate $30 toward the debt on August 17, 2020. *Id.* ¶ 21. The same day that the RMP representative called Plaintiff, he paid the remaining balance on the account directly to Advocate. *Id.* ¶ 27.

Even though Plaintiff paid Advocate the full $195.61 balance as of October 29, 2020, Advocate failed to recall Plaintiff's account from Meduit or RMP. *Id.* ¶ 52. Instead, RMP called Plaintiff three more times after October 29, 2020 demanding payment, each time telling Plaintiff that he still owed $195.61. *Id.* ¶¶ 28–29, 33. Plaintiff suffered emotional distress arguing with RMP during these calls—his symptoms included "shaking in his hands, a fast heartbeat" and "panic attacks" for which he presently seeks care. *Id.* ¶¶ 37–38, 40, 60, 70. Plaintiff makes no allegation of "economic injury" or "actual pecuniary loss" in the complaint. *Id.*

---

[1] For purposes of this motion, the Court accepts as true the allegations in the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In January 2021, Plaintiff filed this suit against Advocate, Meduit and RMP. He brings FDCPA and TCPA claims against RMP and Meduit based on RMP's calls to him (Counts I and IV). He also brings claims against Advocate, RMP and Meduit pursuant to ICFA for engaging in unfair acts (Count II) and deceptive practices (Count III). With respect to RMP (and Meduit, vicariously), Plaintiff complains that RMP unfairly and deceptively tried to collect amounts that Plaintiff did not owe. *Id.* ¶¶ 55–58, 64–65. With respect to Advocate, Plaintiff claims it unfairly and deceptively failed to recall Plaintiff's account from Meduit and RMP after he paid the debt. *Id.* ¶¶ 52–53. 62. He ascribes a common intent to all three defendants—"to force Plaintiff to pay excess amounts that he did not owe." *Id.* ¶¶ 57, 67. He also asserts that Defendants collectively caused him emotional distress from fighting with RMP over the phone. *Id.* ¶¶ 37–38.

## II. Legal Standard

Under Rule 8(a)(2), a complaint generally must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule "reflects a liberal notice pleading regime, intended to 'focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court.'" *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 5154 (2002)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding the complaint must "give the defendant fair notice" of the claim and its basis).

3

In contrast, allegations that sound in fraud must satisfy the heightened Rule 9(b) pleading standards. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleading "ordinarily must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

Here, because Count II alleges "unfair acts", it need only meet the Rule 8(a)(2) notice pleading standard. *See Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). But Count III alleges a "deceptive practice," which sounds in fraud and requires Rule 9(b) heightened pleading. *Pirelli*, 631 F.3d at 441.

Further, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). That is, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding the motion, the Court only takes as true well-pled factual allegations, not mere legal conclusions. *Ashcroft*, 556 U.S. at 679.

**III.     Analysis**

ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business-persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To state a claim under ICFA against Advocate, Plaintiff must sufficiently allege that: (1) Advocate engaged in a deceptive or unfair act or practice; (2) Advocate intended that the Plaintiff rely on the deceptive or unfair practice; and (3) the deceptive or unfair acts occurred during a course of conduct involving trade or commerce. *See Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp 3d 704, 714 (N.D. Ill. 2018); *Hartigan v. Knecht Svcs., Inc.*, 575 N.E.2d 1378, 1387 (Ill. App. Ct. 1991). Plaintiff must also sufficiently allege that the deceptive or unfair act proximately caused him "actual damages." 815 ILCS 505/10a(a); *see also Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002).

**A.     ICFA's "Intent" Requirement**

Advocate's first two arguments for dismissal focus upon ICFA's intent requirement. [20] at 3–5. First, with respect to Plaintiff's "deceptive practice" claim, Advocate argues that Plaintiff fails to adequately plead intent because he does not sufficiently allege that Advocate "intentionally misled Plaintiff in any way." [20] at 4. Second, with respect to both the "deceptive practice" and "unfair acts" claims, Advocate argues that here Plaintiff fails to plead "intent" because Advocate's act was not "*made to* Plaintiff, with the intent that Plaintiff rely on it," and Plaintiff does not "allege that Advocate was aware that RMP continued to contact Plaintiff about the Debt after the Debt was paid." *Id.* at 4–5.

5

Both of Advocate's arguments fail. First, the "intent" requirement under ICFA remains the same for both "unfair act" and "deceptive practice" claims. For both, it is "enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). This is so because even "innocent misrepresentations or omissions intended to induce the plaintiff's reliance are actionable under [ICFA]." *Capiccioni v. Brennan Naperville*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003). As such, for purposes of the "intent" requirement, it does not matter whether Advocate "intentionally misled Plaintiff in any way," [20] at 4.[2] Advocate's argument to the contrary fails.

Instead, for the "intent" requirement, the Court asks the same question for both of Plaintiff's ICFA claims: Did Plaintiff adequately allege that Advocate intended Plaintiff to rely on its allegedly deceptive or unfair act? *Wigod*, 673 F.3d at

---

[2] Although Advocate argues that Plaintiff does not allege "intent to deceive," he does—he alleges that Advocate intended to over-collect on debts. [1] ¶¶ 57, 67. For the first time in its reply, Advocate argues that Plaintiff's allegation is conclusory and unbelievable. [31] at 2–5. Advocate argues that, even if it failed to recall Plaintiff's debt (whether "deceptively" or "unfairly"), it made, at most, an "innocent and non-fraudulent" mistake. *Id*. at 4. It insists that it does not have a general practice of not recalling consumer accounts or over-collecting on debts; and would never risk its reputation as a "well-established and well-respected health provider [*sic*]" by engaging in such conduct. *Id*. at 3–6. According to Advocate, such a "mistake" is neither "unfair" nor "deceptive," and ICFA does not apply. *Id*. at 3. Advocate waived these arguments for purposes of this motion, however, because it raised them for the first time in its reply. *See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005) (holding a party waives arguments raised for the first time on reply). And even if Advocate had properly raised them, they fail, as the Court cannot consider Advocate's factual defenses on a motion to dismiss. *See Air Line Pilots Ass'n, Intern. V. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1154 (7th Cir. 1995) (holding the defendant's intent was an inherently factual issue "that should not be resolved on a motion to dismiss."). Further, "mistake" or "inadvertence" does not *per se* insulate a defendant from liability under ICFA. *Capiccioni v. Brennan Naperville*, 791 N.E.2d 553, 558 (Ill. App. Ct. 2003) ("A defendant need not have intended to deceive the plaintiff; innocent misrepresentations or omissions intended to induce the plaintiff's reliance are actionable under [ICFA]").

575. Advocate insists that Plaintiff could not have relied on Advocate's act because Advocate did not take any action with respect to Plaintiff. At most, Advocate directed its act—which it summarizes as "omit[ing] communicating certain information to Meduit", [20] at 4—toward Meduit or RMP. Further, Advocate insists it could not have intended for Plaintiff to rely on RMP's representations because Advocate did not know RMP continued to call Plaintiff after Plaintiff paid the debt. *Id.* at 5.

Advocate's argument fails because it construes the alleged act too narrowly. Plaintiff alleges that Advocate engaged Meduit to collect on Plaintiff's account on Advocate's behalf, which in turn engaged RMP to collect. [1] ¶¶ 18, 19. Plaintiff also alleges that Advocate failed to update Meduit about the amount Plaintiff owed. *Id.* Thus, Advocate's full act should be described as engaging a debt collector and then failing to recall the debt after the debtor paid it.

Based upon this act, the Court can reasonably infer that Advocate—by engaging Meduit—intended for Meduit (through RMP in this case) to try to get Plaintiff to pay whatever amount Advocate said he owed. The Court can also reasonably infer that Advocate intended Plaintiff, in response to Meduit's collection efforts, to pay. It does not matter that Advocate did not communicate *directly* with Plaintiff. Nor does it matter that Advocate may not have known exactly when RMP called Plaintiff, or how many times it called to try to collect on the debt. Illinois law clearly states that an alleged deceptive or unfair act "need not always be direct between the defendant and plaintiff." *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill.

2009).[3] Instead, a defendant must only intend that the alleged conduct "reach the plaintiff and influence his action." *Id.* (quoting *Shannon v. Boise Cascade Corp*, 805 N.E.2d 213, 218 (Ill. 2004)). Here, Advocate intended Meduit to try to collect money from Plaintiff. As such, Plaintiff adequately pleads "intent to rely" under ICFA.

### B. Actual Damages

Finally, Advocate argues that Plaintiff's ICFA claims fail because Plaintiff "does not plead sufficient economic damages under the ICFA." [20] at 5. Rather, Plaintiff only alleges emotional damages. *Id.* at 6. Advocate maintains that ICFA only provides recovery for "actual damages," which means "purely economic injuries." *Id.* at 5 (quoting *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 801 (N.D. Ill. 2013)).[4]

In response, Plaintiff concedes that he alleges only emotional damages. [30] at 10. He also acknowledges the common view that ICFA requires proof of "actual

---

[3] For the first time on reply, Advocate also argues that because Advocate did not communicate directly with Plaintiff, Plaintiff cannot show Advocate proximately caused his alleged injuries. [31] at 12–13. As with its "mistake" argument, *see* n.2, *supra*, Advocate also waived this proximate causation argument. *See Hess*, 423 F.3d at 665. And even if Advocate had properly raised the argument, it fails for the same reason as the intent argument. *See Shannon v. Boise Cascade Corp*, 805 N.E.2d 213, 218 (Ill. 2004) (holding the alleged act does not need to "be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under [ICFA].").

[4] For the first time in its reply, Advocate makes two other arguments. It argues that, even if Plaintiff may recover for purely emotional distress injuries under ICFA, (1) the "deceptive practice" claim fails because "[f]raud under the ICFA cannot exist if Plaintiff was never deceived in the first place," [30] at 11; and (2) the "unfair act" claim fails because ICFA requires proof that the unfair act caused "significant harm," and his alleged emotional harm was minimal. *Id.* at 10–12. Advocate's argument, particularly regarding the "deceptive practice" claim, may have merit. *See De Bouse*, 922 N.E.2d at 315 ("in a case alleging deception under [ICFA], it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." (quoting *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801 (Ill. 2005))). But, again, Advocate waived these arguments because it only raised them in reply. *See Hess*, 423 F.3d at 665. Regardless, as set out below, the Court finds that Plaintiff may not maintain its ICFA claims against Advocate based on purely emotion distress injuries.

pecuniary loss." *Id.* at 8. But Plaintiff points to a recent decision, *Duarte v. Convergent Outsourcing, Inc.*, No. 17-CV-6051, 2018 WL 3427910 (N.D. Ill. July 16, 2018), which calls into question the origins of this view and holds that ICFA's "actual damages" requirement encompasses purely emotion distress damages at least with respect to "unfair act" claims.[5] Plaintiff asks this Court to adopt *Duarte*'s reasoning to find that he may maintain his ICFA claims based solely on emotional damages. [30] at 10.

>ICFA states the following with respect to damages:
>
>Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

815 ILCS 505/10a(a). While the Illinois Supreme Court has not examined whether purely emotional damages qualify as "actual damages" under ICFA, a frequently relied-upon Appellate Court decision, *Morris v. Harvey Cycle and Camper, Inc.*, 911 N.E. 2d 1049, 1053 (Ill. App. Ct. 2009), holds that ICFA only "provides remedies for purely economic injuries" and actual damages must be "calculable and measured by the plaintiff's loss." Relying on the *Morris* decision, many courts have held that ICFA claims must allege "economic injury" or "actual pecuniary loss." *See, e.g., Camasta*, 761 F.3d at 739 ("In a private action, the element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'"); *Thrasher-Lyon v. Illinois Farmers Ins.*

---

[5] *Duarte* initially distinguished prior cases requiring pecuniary harm on the basis that they involved only "deceptive practices" claims whereas the *Duarte* plaintiff alleged an "unfair act" claim. 2018 WL 3427910, at *4–6. But *Duarte*'s subsequent analysis did not distinguish between the type of ICFA claim at issue. The Court need not decide whether *Duarte*'s reasoning would apply to a "deceptive practice" claim, however, because, as set out below, this Court declines to adopt it.

*Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2019) ("emotional damages do not constitute actual damages under the ICFA."); *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 848 (N.D. Ill. 2017) ("emotional damages do not constitute actual damages under the ICFA"); *Liston v. King.com, Ltd*, 254 F. Supp. 3d 989, 1005 (N.D. Ill. 2017) (same).

On the other hand, in *Duarte*, the court conducted a detailed analysis of *Morris* and its origins. *See Duarte.*, 2018 WL 3427910, at \*4–7. The court concluded that the *Morris* Court mistakenly "transformed a series of cases that allowed recovery for 'purely' economic harms into the proposition that the *only* form of damages allowed under ICFA are economic ones." *Id.*, at \*6. As such, the court declined to adopt *Morris* and instead looked to ICFA's statutory language to predict how the Illinois Supreme Court would decide the issue. *Id*. The court reasoned that, because ICFA uses both the term "actual damages" and "actual economic damages" in the same provision, the Illinois legislature must have intended "actual damages" to mean more than just "actual economic damages." *Id.*, at \*7. Having established this, the court noted that at least one other Illinois statute, the Illinois Human Rights Act, uses the term "actual damages" and courts agree that this "may include compensation for mental suffering." *Id.* (quoting *Village of Bellwood Bd. of Fire and Police Com'rs v. Human Rights Com'n*, 541 N.E.2d 1248, 1248 (Ill. App. Ct. 1989)). Based upon this, the court concluded that a plaintiff may bring an ICFA claim for emotional damages alone.

With due respect to this thoughtful analysis, the Court declines to adopt it. A few months before the court issued the *Duarte* opinion, the Seventh Circuit reiterated

10

the general proposition that ICFA claims require evidence of actual "pecuniary loss." *See Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829–30 (7th Cir. 2018).[6] In *Dieffenbach*, the Seventh Circuit reversed a lower court's finding on damages in an ICFA claim, finding that the plaintiff asserted "money out of pocket," which is a "real and measurable" loss. *Id.* at 830. Notably, the court, citing *Morris*, also stated that, "if the plaintiff has suffered an economic loss, noneconomic injuries are compensable." *Dieffenbach*, 887 F.3d at 830. Thus, according to the Seventh Circuit, a party may recover for noneconomic damages under ICFA if it also "suffered an economic loss." *Id.*

Further, after *Duarte*, cases continue to hold that ICFA claims require evidence of "actual pecuniary loss." *See, e.g., Saika v. PHH Mortgage Corp.*, No. 18-CV-3888, 2020 WL 4736409, at *6 (N.D. Ill. Aug. 14, 2020) (holding "Plaintiffs must adduce evidence that they suffered actual pecuniary loss" (internal quotations omitted)); *Breeze v. Bayco Prods. Inc.*, 475 F. Supp. 3d 899, 908 (S.D. Ill. 2020) ("damages must go beyond mere intimations of psychological harm or claims of nuisance"); *Griffin v. U.S. Bank Nat'l Assoc.*, No. 15-CV-6871, 2019 WL 4597364, at *6 (N.D. Ill. Sept. 23, 2019) (holding "emotional distress, inconvenience and aggravation are not enough" to maintain an ICFA claim); *Yeager v. Innovus Pharms, Inc.*, No. 18-CV-397, 2019 WL 447743, at *8 (N.D. Ill. Feb. 5, 2019) (same).

In light of *Dieffenbach* and the many cases before and after it that require "actual pecuniary loss," the Court finds that Plaintiff may not maintain an ICFA

---

[6] The *Duarte* opinion did not acknowledge *Dieffenbach*.

11

claim against Advocate only based on alleged emotional injuries without pecuniary loss. In fact, because Plaintiff alleges that Advocate, Meduit and RMP collectively caused his injury, [1] ¶¶ 37–38, 40, 60, 70, and concedes the injury is purely emotional, [30] at 10, Plaintiff's ICFA claims fail as to all three Defendants.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant Advocate's Motion to Dismiss [20] and dismisses without prejudice Counts II and III as to Advocate. The Court also dismisses without prejudice Counts II and III as to Defendants Meduit and RMP.

Dated: March 14, 2022  Entered:

_____
John Robert Blakey
United States District Judge